## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TIANJIN MOTOR DIES CO., LTD.,

      Plaintiff,

Case No. 19-_____

v.

DIETECH NORTH AMERICA, LLC,

      Defendant.

---

DICKINSON WRIGHT PLLC
Mark V. Heusel (P47528)
Robert L. Avers (P75396)
350 S. Main St. Suite 300
Ann Arbor, MI  48084
734-623-1672
mheusel@dickinsonwright.com
ravers@dickinsonwright.com
*Attorneys for Tianjin Motor Dies Co., Ltd.*

---

### PLAINTIFF TIANJIN MOTOR DIES CO., LTD.'S COMPLAINT AGAINST DEFENDANT DIETECH NORTH AMERICA, LLC

Plaintiff Tianjin Motor Dies Co., Ltd. ("Tianjin Motor Dies"), by its attorneys, Dickinson Wright PLLC, states as follows for its Complaint against Defendant DieTech North America, LLC ("DieTech"):

## PARTIES AND JURISDICTION

1. Tianjin Motor Dies is a limited company organized under the laws of the People's Republic of China, with its principal place of business in Tianjin, China. Tianjin Motor Dies is therefore a citizen of a foreign state.

2. DieTech is a Michigan limited liability company with its principal place of business in Roseville, Michigan. DieTech is therefore a citizen of Michigan.

3. This Court has personal jurisdiction over the parties to this civil action.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000.00 exclusive of interest, costs, and attorney fees, and complete diversity of citizenship exists between the parties.

5. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, which expressly grants to federal district courts original jurisdiction over all civil actions arising under the laws or treaties of the United States such as the instant dispute, which is governed by the United Nations Convention on Contracts for the International Sale of Goods (the "CISG"), a multilateral treaty to which both the United States and the People's Republic of China are signatories. This Court likewise has subject matter jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction) over the supplemental state law claims alleged herein because the state law claims are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. Venue is proper in the Southern District of Michigan under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2).

## GENERAL ALLEGATIONS

7. Tianjin Motor Dies is a world class manufacturer of metal forming equipment such as dies, auto molds, stamping products, and welding fixtures used by, among others, a variety of Original Equipment Manufacturers such as, for example, General Motors Company ("General Motors").

8. Metal forming equipment designed and manufactured by Tianjin Motor Dies' is generally used to press, form, and trim raw materials such as steel and aluminum into automobile body components such as roofs, doors, and fenders.

9. DieTech is a die supplier that offers engineering, construction, and tryout services for medium and large metal stamping dies.

10. DieTech is a self-proclaimed "Diemakers' Die Maker," and promotes itself as "the most effective die tryout facility in North America."

11. General Motors ordered from DieTech several die lines that General Motors required to produce Class A Heavy Duty box side outer panels for the Chevrolet Silverado and the GMC Sierra (hereinafter, the "Box Side Die Project").

12. As part of fulfilling its obligations to General Motors under the Box Side Die Project, DieTech issued a Request for Quotation ("RFQ") to Tianjin

Motor Dies for the EPack, Die Design, Die Construction, and Fixture aspects of the Box Side Die Project.

13. With respect to the Die Construction aspect of the Box Side Die Project, DieTech's RFQ explained that any responsive quotation should include "installing the dies in the press and run panels to verify construction. Please do not include spotting the die for bearing, only clearing interferences as required to get the die on bottom and make a part."

14. Tianjin Motor Dies responded to DieTech's RFQ with a Quotation (the "Quotation"), under which Tianjin Motor Dies agreed provide the EPack, Die Design, and Die Construction for the Box Side Die Project.

15. Under the Quotation, and consistent with DieTech's RFQ, Tianjin Motor Dies was not responsible for the Verification, Tryout, Buyoff, or Home Line Support aspects of the Box Side Die Project.

16. Rather, DieTech was responsible for the Verification, Tryout, Buyoff, and Home Line Support aspects of the Box Side Die Project.

17. Between approximately March 2017 and May 2017, and in response to Tianjin Motor Dies' Quotation, DieTech ordered eight die lines from Tianjin Motor Dies for the Box Side Die Project (collectively, the "Box Side Dies"): (1) Chevy 6.7 foot left box side outer die line; (2) Chevy 6.7 foot right box side outer die line; (3) GMC 6.7 foot left box side outer die line; (4) GMC 6.7 foot right box

side outer die line; (5) Chevy 8.1 foot left box side outer die line; (6) Chevy 8.1 foot right box side outer die line; (7) GMC 8.1 foot left box side outer die line; and (8) GMC 8.1 foot right box side outer die line.

18. As a result, Tianjin Motor Dies and DieTech became parties to contracts concerning the Box Side Dies (the "Box Side Die Contracts"). The documents comprising the Box Side Die Contracts include, but are not limited to, DieTech's RFQ, Tianjin Motor Dies' Quotation, and DieTech's Purchase Orders, all of which are in the possession of DieTech.

19. Tianjin Motor Dies designed and constructed the Box Side Dies as required under the Box Side Die Contracts.

20. In or around December 2017 and January 2018, a DieTech representative visited Tianjin Motor Dies' facility in Tianjin, China, for the purpose of completing an "Initial Review" of four of the Box Side Dies: the Chevy 6.7 foot left box side outer die line; the Chevy 6.7 foot right box side outer die line; the GMC 6.7 foot left box side outer die line; and the GMC 6.7 foot right box side outer die line (collectively, the "6.7 Foot Box Side Dies").

21. After several days of die inspection by DieTech's representative and corresponding corrections made by Tianjin Motor Dies, DieTech signed-off on GM Static Die Check Sheets, thereby completing the Initial Review of the 6.7 Foot Box Side Dies in China.

22. DieTech then requested that Tianjin Motor Dies ship the 6.7 Foot Box Side Dies from China to DieTech's facility in Roseville, Michigan.

23. DieTech agreed to assume all obligations and responsibilities regarding the 6.7 Foot Box Side Dies upon shipment of those dies from Tianjin Motor Dies' facility in Tianjin, China.

24. The 6.7 Foot Box Side Dies were delivered to DieTech's facility in Roseville, Michigan, between March 28, 2018, and April 13, 2018.

25. DieTech accepted the 6.7 Foot Box Side Dies.

26. In or around April 2018, a DieTech representative visited Tianjin Motor Dies' facility in Tianjin, China, for the purpose of completing an "Initial Review" of the remaining four Box Side Dies: the Chevy 8.1 foot left box side outer die line; the Chevy 8.1 foot right box side outer die line; the GMC 8.1 foot left box side outer die line; and the GMC 8.1 foot right box side outer die line (collectively, the "8.1 Foot Box Side Dies").

27. After several days of die inspection by DieTech's representative and corresponding corrections made by Tianjin Motor Dies, DieTech signed-off on GM Static Die Check Sheets, thereby completing the Initial Review of the 8.1 Foot Box Side Dies in China.

28. DieTech then requested that Tianjin Motor Dies ship the 8.1 Foot Box Side Dies from China to DieTech's facility in Roseville, Michigan.

29. DieTech agreed to assume all obligations and responsibilities regarding the 8.1 Foot Box Side Dies upon shipment of those dies from Tianjin Motor Dies' facility in Tianjin, China.

30. The 8.1 Foot Box Side Dies were delivered to DieTech's facility in Roseville, Michigan, between May 28, 2018, and June 18, 2018.

31. DieTech accepted the 8.1 Foot Box Side Dies.

32. Under the terms of the Box Side Die Contracts, DieTech was required to pay Tianjin Motor Dies within 15 days after receiving payment from General Motors.

33. Upon information and belief, General Motors has paid DieTech in full for the Box Side Die Project.

34. DieTech, however, failed to pay Tianjin Motor Dies as required under the Box Side Die Contracts.

35. DieTech currently owes Tianjin Motor Dies more than $7,200,000.00, plus interest, for the Box Side Dies.

36. Despite repeated demands, DieTech refuses to pay Tianjin Motor Dies the amount due and owing.

37. Approximately one year after delivery of the Box Side Dies, DieTech advised Tianjin Motor Dies that it would not pay for the Box Side Dies, but rather

had unilaterally decided to withhold payment as an offset to claims that DieTech alleges to have against Tianjin Motor Dies.

38. Specifically, DieTech alleges that Tianjin Motor Dies breached the Box Side Die Contracts by "failing to build and construct the [Box Side Dies] to GM's standards and specifications, failing to satisfy the anticipated die conditions for the first panel to gage review and failing to deliver the [Box Side Dies] to DieTech in a timely manner."

39. DieTech's claims against Tianjin Motor Dies wholly lack merit, as Tianjin Motor Dies never agreed to provide Verification, Tryout, Buyoff, or Home Line Support under the Box Side Die Contracts, and any claim otherwise constitutes a substantial alteration of the parties' agreement.

40. The Verification, Tryout, Buyoff, and Home Line Support aspects of the Box Side Die Project were DieTech's responsibility to either complete on their own or with the help of a subcontractor other than Tianjin Motor Dies.

41. Tianjin Motor Dies has fulfilled all of its contractual obligations to DieTech and has also incurred substantial cost and expense providing services to DieTech beyond what was required by the Box Side Die Contracts.

42. DieTech's claims and attempts to offset the payment due to Tianjin Motor Dies are inconsistent with its acceptance and lack of rejection of the Box Side Dies.

43. DieTech failed to notify Tianjin Motor Dies of the alleged defects of the Box Side Dies within a reasonable period of time.

44. Rather than bring the alleged defects to the attention of Tianjin Motor Dies, DieTech elected to remain silent, perform work on the Box Side Dies, and back-charge millions of dollars to Tianjin Motor Dies.

45. Tianjin Motor Dies was deprived of its rights and remedies as a result of DieTech's failure to notify Tianjin Motor Dies of the alleged defects of the Box Side Dies within a reasonable period of time, such rights and remedies including but not limited to Tianjin Motor Dies' opportunities to inspect and address the alleged defects.

46. DieTech continues to wrongfully withhold payment from Tianjin Motor Dies.

47. DieTech has no right to withhold payment for the Box Side Dies.

48. DieTech both expressly and implicitly agreed to pay for the Box Side Dies by ordering them from Tianjin Motor Dies.

### Count I – Breach of Contract under the CISG

49. Tianjin Motor Dies incorporates by reference and restates all allegations above.

50. The Box Side Die Contracts between Tianjin Motor Dies and DieTech are valid and binding contracts.

51. Tianjin Motor Dies provided more than $7,200,000.00 worth of goods to DieTech in the form of the Box Side Dies, which were accepted by DieTech.

52. Tianjin Motor Dies otherwise performed all of its obligations under the Box Side Die Contracts, and all conditions precedent to the enforcement of the Box Side Die Contracts, if any, have been satisfied.

53. Under the terms of the Box Side Die Contracts, DieTech was required to pay Tianjin Motor Dies within 15 days after receiving payment from General Motors.

54. DieTech breached the Box Side Die Contracts by failing to pay Tianjin Motor Dies within 15 days after receiving payment from General Motors.

55. DieTech currently owes Tianjin Motor Dies more than $7,200,000.00, plus interest, for the Box Side Dies.

56. Despite repeated demands, DieTech refuses to pay Tianjin Motor Dies the amount due and owing under the Box Side Die Contracts.

57. Tianjin Motor Dies has suffered damages and will continue to suffer damages as a result of DieTech's breach of the Box Side Die Contracts.

58. Tianjin Motor Dies elects to pursue its remedies under the CISG, including but not limited to damages under Article 74 of the CISG, as a result of DieTech's breach of its contractual obligations to pay Tianjin Motor Dies for the Box Side Dies.

**WHEREFORE**, Tianjin Motor Dies respectfully requests that this Court enter judgment against DieTech and in favor of Tianjin Motor Dies in an amount of at least $7,200,000.00 or such greater amount that may be due, plus interest, attorney fees, and costs, and grant such additional relief as this Court deems just and equitable.

## Count II – Breach of Contract under Michigan Law

59. Tianjin Motor Dies incorporates by reference and restates all allegations above.

60. The Box Side Die Contracts between Tianjin Motor Dies and DieTech are valid and binding contracts.

61. DieTech materially breached the Box Side Die Contracts by failing to fully and timely pay all amounts owed to Tianjin Motor Dies for the Box Side Dies, which breach is the cause of damages that Tianjin Motor Dies has suffered and will continue to suffer.

62. Tianjin Motor Dies performed all of its obligations under the Box Side Die Contracts, and all conditions precedent to the enforcement of the Box Side Die Contracts, if any, have been satisfied.

**WHEREFORE**, Tianjin Motor Dies respectfully requests that this Court enter judgment against DieTech and in favor of Tianjin Motor Dies in an amount of at least $7,200,000.00 or such greater amount that may be due, plus interest,

attorney fees, and costs, and grant such additional relief as this Court deems just and equitable.

### Count III – Unjust Enrichment/Quantum Meruit (in the alternative)

63. Tianjin Motor Dies incorporates by reference and restates all allegations above.

64. DieTech received a substantial benefit from Tianjin Motor Dies by receiving the Box Side Dies and ancillary services for which DieTech has not fully compensated Tianjin Motor Dies.

65. DieTech has been unjustly enriched at the expense of Tianjin Motor Dies.

66. DieTech is required to compensate Tianjin Motor Dies for these benefits, as it would otherwise be inequitable for DieTech to retain those benefits.

67. Tianjin Motor Dies is also entitled to quantum meruit recovery for the value of the goods and services Tianjin Motor Dies provided to DieTech in the event the Court determines that there was no binding contract between the parties.

**WHEREFORE**, Tianjin Motor Dies respectfully requests that this Court enter judgment against DieTech and in favor of Tianjin Motor Dies in an amount of at least $7,200,000.00 or such greater amount that may be due, plus interest, attorney fees, and costs, and grant such additional relief as this Court deems just and equitable.

### Count IV – Promissory Estoppel (in the alternative)

68. Tianjin Motor Dies incorporates by reference and restates all allegations above.

69. DieTech unequivocally promised to pay Tianjin Motor Dies the amounts stated in Tianjin Motor Dies' Quotation.

70. Tianjin Motor Dies reasonably and detrimentally relied on DieTech's promises.

71. The circumstances are such that, to avoid injustice to Tianjin Motor Dies, DieTech's promises must be enforced.

**WHEREFORE**, Tianjin Motor Dies respectfully requests that this Court enter judgment against DieTech and in favor of Tianjin Motor Dies in an amount of at least $7,200,000.00 or such greater amount that may be due, plus interest, attorney fees, and costs, and grant such additional relief as this Court deems just and equitable.

### Count V – Declaratory Judgment against DieTech

72. Tianjin Motor Dies incorporates by reference and restates all allegations above.

73. Tianjin Motor Dies' and DieTech's respective rights and obligations under the Box Side Die Contracts and applicable law are in dispute.

74. Specifically, DieTech alleges that the Box Side Die Contracts thrust obligations upon Tianjin Motor Dies contrary to the language of the Box Side Die Contracts.

75. Moreover, to the extent that DieTech claims the Box Side Dies were defective, DieTech deprived Tianjin Motor Dies of its rights and remedies, such as the ability to inspect and address the alleged defects, when DieTech failed to notify Tianjin Motor Dies of the alleged defects within a reasonable period of time.

76. An actual case and controversy now exists between the parties regarding their respective rights and obligations under the Box Side Die Contracts and applicable law.

**WHEREFORE**, Tianjin Motor Dies respectfully requests that this Court declare the rights and obligations of Tianjin Motor Dies and DieTech under the Box Side Die Contracts and applicable law, enter a declaratory judgment against DieTech and in favor of Tianjin Motor Dies declaring that Tianjin Motor Dies is entitled to $7,200,000.00 or such greater amount that may be due, plus interest, attorney fees, and costs, and grant such additional relief as this Court deems just and equitable.

Respectfully Submitted,
DICKINSON WRIGHT PLLC

By: /s/ Robert L. Avers
Mark V. Heusel (P47528)
Robert L. Avers (P75396)

          350 S. Main St. Suite 300
          Ann Arbor, MI  48084
          734-623-1672
          mheusel@dickinsonwright.com
          ravers@dickinsonwright.com
          *Attorneys for Tianjin Motor Dies Co., Ltd.*

Dated: November 1, 2019

ANNARBOR 78686-9 265782v3